UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

v.

JAMES ANTHONY STINSON,

Defendant/Petitioner.

NO. 12-CR-040-JLQ
(NO. 13-CV-372-JLQ)

ORDER DENYING MOTION UNDER 22 U.S.C. § 2255

BEFORE THE COURT, without oral argument, is Defendant James Anthony Stinson's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 159). The Defendant seeks to stand by and receive the benefit of a Plea Agreement and his plea of guilty to a reduced charge with a statutory maximum sentence of ten years as opposed to the original charge which carried a mandatory minimum sentence of fifteen years and a statutory maximum of life imprisonment. Defendant's Motion asks the court to vacate his sentence and give him "the benefit of his bargain agreed upon in the original plea agreement" which had been rejected by the court pursuant to Rule 11(c)(3)(A).

The Motion was filed on October 25, 2013. The court directed the Government to respond. On November 27, 2013, the Government filed its Response (ECF No.167), to which the Defendant replied (ECF No. 168). Defendant seeks resentencing before a different judge on two grounds: 1) claimed involuntariness of the plea due to alleged participation of the court in plea bargaining negotiations; and 2) ineffective assistance of counsel. Having reviewed

the record and the court's independent recollection of the plea events, for the reasons set forth below, the court denies Defendant's Motion.

**I. BACKGROUND**

On April 27, 2012, Defendant was arraigned on an Indictment charging him with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924. (ECF No. 1). The case was assigned to the undersigned who presided over all further proceedings. If convicted, the applicable Armed Career Criminal Act (ACCA) imposed a 15-year mandatory prison sentence, with a potential sentence up to life without parole since the Defendant had at least "three previous convictions...for a violent felony or serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924 (e)(1).

The Pretrial Services Bail Report (ECF No. 18) stated that the Defendant's history included "15 prior failures to appear in court," "multiple violations for failure to comply with conditions of supervision," use of four different aliases, two prior arrests for violent crimes, and 27 prior arrests or convictions for drug/alcohol related offenses, including prior felony drug convictions. (ECF No. 18). Based upon the information in the Pretrial Services Report, the Defendant, represented by an experienced Deputy Federal Defender, Robert Fischer, was aware that he would qualify for the enhanced sentences under the ACCA. (ECF No. 25 at 2);(ECF No. 123 at 2). On July 27, 2012, the United States filed a Notice indicating it would be pursuing the Armed Career Criminal sentencing enhancement based upon four prior Washington state felony cocaine trafficking convictions. (ECF No. 77).

The case was originally scheduled for jury trial commencing on July 2, 2012. (ECF No. 13). However, the Defendant motioned the court twice for continuances, both of which were granted. Trial was first continued to July 16, 2012 (ECF No. 36) and ultimately to August 20, 2012 (ECF No. 70). Pretrial hearings were held before the undersigned on June 7, 2012, July 6, 2012, and finally on Friday, August 17, 2012 commencing at 9:00 a.m. The evidentiary hearing and argument lasted until 12:15 p.m.

At the conclusion of the evidentiary and motions hearings on Friday August 17, 2012, the court orally ruled on nine substantive pretrial motions, including the Defendant's Motions in Limine, Motion to Dismiss, Motion to Exclude pursuant to *Daubert*, and Motion to Suppress based upon an alleged search in violation of the Fourth Amendment. The testimony presented showed that the Government had a strong case that the Defendant possessed a loaded firearm while involved in drug dealing. The court denied the Defendant's third request to postpone the trial and informed counsel that the jury trial on the Indictment would commence as scheduled at 8:30 a.m. the following Monday, August 20, 2012. The court made no statement or mention of any possible plea or other disposition and none was indicated by counsel. (ECF No. 137).

On that same day, August 17, 2012, forty-six prospective jurors, residing in locations across this district which comprises 41,960 square miles and juror travels of up to 200 miles, had been directed to call the court's Clerk on and after 3:00 p.m. to find out whether they were to report to Spokane on Monday morning, August 20, 2012, for trial of this case.

At approximately 2:30 p.m. on that same Friday, August 17, 2012, counsel for the Government, Assistant United States Attorney George Jacobs, informed the court's staff that the parties had entered into a Plea Agreement and he delivered a copy to the court's chambers for the court's consideration. The Plea Agreement, made pursuant to Fed.R.Crim.P. 11(c)(1)(C) was subject to the court's approval or rejection pursuant to Rule 11(c)(3)(A). The proffered Plea Agreement specified that the Defendant agreed to plea to a lesser charge, Possession of a Firearm and Ammunition by an Addict and Unlawful User of a Controlled Substance. This substitute charge had no mandatory minimum term of imprisonment and a statutory maximum of not more than 120 months. The Plea Agreement also specified that "if the Court accepts this Plea Agreement, the Court is bound by the 77 to 96 month sentencing range of imprisonment...If the Court does not accept the plea or chooses

to sentence the Defendant to a lesser or higher sentence than the United States and the Defendant have agreed upon, the Defendant and the United States each may withdraw from the plea and this agreement is null and void."

Rule 11(c)(3)(A)("Judicial Consideration of a Plea Agreement") requires the court to review a Rule 11(c)(1)(C) plea agreement and accept or reject it. Given the court's knowledge of the case and the Defendant's extensive criminal record, including his qualification for the Career Offender enhancements, the court determined it would not accept the Plea Agreement which limited the court's sentencing discretion to a maximum term of 96 months. The court promptly notified AUSA Jacobs and Federal Defender Fischer in chambers of the court's rejection of the Plea Agreement containing a maximum sentence of 96 months. Within an hour of the court's rejection notification, counsel informed the court the parties had renegotiated and signed a new Plea Agreement with the same terms except an agreed sentence of 120 months. (ECF No. 169). The court did not participate in the original or subsequent plea negotiations.

The court promptly arranged a Change of Plea Hearing, convening court at 4:35 p.m. on Friday, August 17, 2012, with all parties, including the Defendant, present. Prompted by the position of the parties in the new (second) Plea Agreement of a mandatory 120 month sentence, the court explained its rejection of the initial agreement was not due to the fact the initial agreement provided a sentencing range. (ECF No. 167, Ex. B at 5:17-25). Rather, the court clarified, "...the reason I would not accept the original plea agreement was that it did not give the court the option of imposing the ten-year sentence – up to ten years." *Id.* at 6:8-10. When Mr. Fischer thereafter volunteered comments about terms of a new Plea Agreement, the court responded: "I'm not –it's not the role of the court to make plea agreements or to participate in plea agreements." *Id*. at 6:20-22. AUSA Jacobs then volunteered that it was "acceptable" to him, if it were to defense counsel and the Defendant, for the parties to return to their original agreement and "make

handwritten modifications to that, deleting the 96 months to 120 months." (ECF No. 167, Ex. B at 7:9-14). The court then called a recess to enable defense counsel to further confer with the Defendant and with Mr. Jacobs. (ECF No. 167, Ex. B at 8).

At 5:00 p.m., court reconvened. Mr. Fischer informed the court he had utilized sufficient time to talk to the Defendant and the parties presented the court with the final Plea Agreement containing the same terms as their original agreement, except with the maximum term of 96 months being amended to a maximum term of 120 months which the court accepted. The Defendant agreed to waive indictment on the substitute and reduced charge and the court proceeded with the Rule 11 colloquy. Pursuant to the parties' agreement, the Defendant entered a guilty plea to the Information Superseding Indictment charging the Defendant with being an Addict and Unlawful User of a Controlled Substance in Possession of a Firearm and Ammunition with a maximum sentencing term of 120 months. The court found the Defendant's guilty plea was knowing, intelligent, and voluntary, and not induced by fear, coercion or ignorance. The court therefore accepted the Defendant's guilty plea to the reduced charge.

As part of the final Plea Agreement the Defendant specifically agreed to waive both his right to appeal as well as to collaterally attack his plea and sentence. Of import, for purposes of the §2255 Motion before the court, Paragraph 17 contained the following express waiver of his right to file a Motion under § 2255:

> 17. Appeal Rights
>
> The Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction and the sentence the court imposes, including any restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

(ECF No. 167, Ex. A).

On November 13, 2012, the court sentenced the Defendant. The court determined the Offense Level to be 25 and the Criminal History Category to be VI. The advisory Sentencing Guideline range was 110-137 months. Defense counsel asked the court to sentence the Defendant to 77 months incarceration. The Government recommended a sentence of 96 months. Exercising its discretion, the court imposed a sentence of 120 months, the statutory maximum and within the maximum set forth in the final Plea Agreement and the Sentencing Guideline range. Judgment was entered on November 16, 2012. No appeal was filed.

On October 25, 2013, the Defendant filed the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, asking the court to vacate his sentence, but not the other terms of his agreement with the Government including the reduced charge, and "order an evidentiary hearing before a different judge." The Defendant argues that the court should vacate his sentence for two reasons. First, he argues the court violated Federal Rule of Criminal Procedure 11(c)(1)'s prohibition on judicial participation in plea negotiations. Second he argues that his attorney, Robert Fischer, provided ineffective assistance of counsel in two respects: failing to "object to the Government's breach of the plea agreement;" (ECF No. 159 at 10) and failing to "recognize" and "raise" "a viable suppression motion based on a Fourth Amendment issue." (ECF No. 159 at 15). In effect, the Defendant seeks specific enforcement of the original 96 month maximum Plea Agreement that the court rejected.

## II. LEGAL STANDARD

A prisoner in custody under sentence of a federal court who wishes to collaterally attack the validity of his conviction or sentence must do so by filing a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 in the court which imposed the sentence. Under 28 U.S.C. § 2255, the federal sentencing court is authorized to grant relief if it concludes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). If the court finds that relief is warranted under § 2255, it must "vacate and set the judgment aside" and then do one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *see also United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). When a motion "presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (evidentiary hearing unnecessary if allegations when viewed against the record are palpably incredible or patently frivolous).

A defendant's past representations in open court "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *see also Womack v. McDaniel*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting claim that plea was not knowingly, voluntarily or intelligently entered where belied by his statements in open court and the contents of his signed plea agreement).

## III. DISCUSSION

The Government contends that the court should not entertain the merits of Plaintiff's claims in his § 2255 Motion because, in exchange for the filing of the reduced charge pursuant to the Plea Agreement he expressly waived the right to attack his conviction and sentence collaterally. A term in Defendant's Plea Agreement states that he "waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. §

2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence." (ECF No. 167, Ex. A). Courts generally enforce plea agreements containing knowing and voluntary waivers of statutory rights of appeal or collateral attack because such "waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements." *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). Such a waiver is generally enforceable if (1) the waiver encompasses the present motion, and (2) the waiver is knowingly and voluntarily made. *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir.2011) *(quoting United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009)). The waiver of a right to challenge a conviction or sentence is knowing and voluntary if the plea agreement as a whole was knowing and voluntary. *See United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005) (discussing the right to appeal) (overruled on other grounds). Courts look to "the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996).

However, a defendant cannot waive the right to file a § 2255 motion challenging the knowing and voluntary nature of a plea agreement because enforcing the waiver requires that the waiver was valid in the first place. *See Washington v. Lampert*, 422 F.3d 864, 869–73 (9th Cir. 2005) (holding that a "plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an ineffective assistance of counsel claim that challenges the voluntariness of the waiver."); *United States v. Racich*, 35 F.Supp.2d 1206, 1210 (S.D.Cal. 1999) (holding "a waiver does not bar claims that relate to the validity of the waiver itself .").

Defendant's ineffective assistance of counsel claims do not challenge the validity of the plea or waiver. However, Defendant argues his plea was involuntary

because of the court's alleged violation of Fed.R.Crim.P. 11(c)(1) and "impermissible interjection into the plea negotiation process and coercive ‘now or never' tactics at the change-of-plea hearing on August 17, 2012 ..." (ECF No. 159). Therefore, the court must consider the merits of this claim and whether it renders Defendant's waiver involuntary.

**A. Federal Rule of Criminal Procedure 11**

Federal Rule of Criminal Procedure 11(c)(3)(A) requires a district court to accept or reject a plea agreement entered into under Rule 11(c)(1)(C) and "vests district courts with considerable discretion to assess the wisdom of plea bargains." *In re Morgan*, 506 F.3d 705, 712 (9th Cir. 2007). The court's rejection of a plea agreement may properly be based on the court's view that the proposed sentence would be too lenient, *id*. at 708, that the offense of conviction would not adequately represent the defendant's criminal conduct and would undermine the Sentencing Guidelines, *U.S. v. Greener*, 979 F.2d 517 (7th Cir. 1992), or that its sentencing discretion would be curbed, *U.S. v. Nanez*, 694 F.2d 405 (5th Cir. 1982), *cert den.* 461 U.S. 909 (1984). In the Ninth Circuit, where the parties have agreed to a specific sentence or sentencing range, the court is not only expected to, but required to consider whether the sentencing bargain is adequate, and if not, articulate a sound reason for rejecting the agreement. *In re Morgan*, 506 F.3d 705 (9th Cir. 2007)("a district court properly exercises its discretion when it rejects a plea agreement calling for a sentence the court believes ‘is too lenient or otherwise not in the public interest'" and "must provide individualized reasons for rejecting the [sentence-bargain plea] agreement, based on the specific facts and circumstances presented.").

Though the law requires that the court articulate its reasons for rejecting a plea agreement, Fed.R.Crim.P. 11(c)(1) provides, in relevant part: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." However, the Rule specifically requires the court to accept or reject a

plea agreement and the court's decision in that regard pursuant to Rule 11(c)(3)(A) does not and cannot constitute inappropriate participation in the plea negotiations. The main reasons for the ban on judicial participation in plea discussions are to (1) prevent the "risk of coercing a defendant to ... plead guilty," (2) protect the "integrity of the judicial process," and (3) preserve 'the judge's impartiality after the negotiations are completed." *U.S. v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013). The Rule seeks to "prevent 'judge[s] from shaping plea bargains or persuading the defendant to accept particular terms'" and "eliminate all judicial pressure from plea discussions." *Id*. In the instant case, the court's only role was to reject or accept the proffered plea agreements. The court did not participate in the negotiations leading up to the final agreement and ultimate plea of guilty.

Issues arising under Rule 11 are highly fact-specific and require a discriminating examination of the remarks and context in which they were made. The Ninth Circuit's case-law examining claimed violations of Rule 11 have generally held a district judge violates Rule 11(c)(1) when a judge encourages a defendant to plead guilty, negotiates parts of the plea agreement, or prior to agreement commits itself to a sentence of at least a certain level of severity. *See e.g., United States v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992) (before the parties had concluded a plea agreement, judge violated Rule 11 by encouraging the defendant to take the plea bargain rather than go to trial commenting on the alternatives presented to the defendant by the plea offer and suggesting that the defendant "sleep on" it); *United States v. Gonzalez–Melchor*, 648 F.3d 959, 960 (9th Cir. 2011) (district court's direct negotiation of appellate-waiver during sentencing in exchange for a reduced sentence violated Rule 11); *U.S. v. Kyle*, 734 F.3d 956 (9th Cir. 2013)(after having rejected the parties' first agreement with a 360-month stipulated sentence as too lenient, court violated Rule 11 with remarks such as, "the court's view is that this man is never going to get out of jail...I'm prepared to impose a life sentence," because they emphasized to the Defendant that his only chance to escape a life sentence would be to accept a plea agreement for

substantially longer than 360 months).

A full-record assessment of the particular facts of this case presents distinct qualitative differences between statements found to require vacation of a plea and sentence and the limited role of the court herein which was to reject or accept a proffered Plea Agreement. There is no contention, or basis therefore, that the court suggested to, pressured, or coerced the Defendant to enter into a Plea Agreement and a plea of guilty. At no time did the court suggest to the Defendant the obvious consequences of going to trial on the Indictment with the fifteen year mandatory minimum and possible life sentence consequences of a conviction thereon. Those were matters only discussed with the Defendant by his attorney.

Defendant claims the court "interjected itself into the plea negotiation process by informing counsel...that the court would not accept a plea agreement with less than a ten-year provision." (ECF No. 168 at 2). The court's role in accepting or rejecting a plea agreement is provided for by Rule 11(c)(3)(A). The court's involvement came only after the parties had concluded their negotiations and notified the court of the Defendant's desire to change his plea. As Rule 11 requires, the court commented while evaluating the terms of an already negotiated, written Rule 11(c)(1)(C) Plea Agreement. Though the Defendant complains the court "refused to accept" his initial plea bargain, it is within the sentencing judge's discretion to accept or reject such agreements as provided by Rule 11(c)(3)(A).

In this case there was no premature commitment to a certain sentence. *See e.g., United States v. Barrett*, 982 F.2d 193, 194-96 (6th Cir.1992)(defendant's conviction set aside where the judge stated that "there is no way on God's green Earth I'm going to sentence [defendant] to only seven years, and I think the likelihood is I'm going to exceed the guidelines."). This court discussed on the record its concern that counsel may have misconstrued the court's reason for rejecting the original agreement. The court made clear, as required by Rule 11, that it rejected the original agreement due its refusal to yield its discretion to the lenient agreed range, specifically its 96-month upper-limit, not because the court had

pre-determined what the sentence should be. (ECF No. 167, Ex. B at 5:17-23)("As I indicated to counsel, knowing this case, knowing Mr. Stinson's record, it appeared to me that the [c]ourt should have the option of imposing the maximum sentence of ten years. But I did not mean to convey the fact that, without a pre-sentence report, without counsel having the opportunity to convince the court to sentence to less than ten years, that I was precluding that.").

Finally, the court played no role in shaping the terms of the Plea Agreement. The court reminded the Defendant and counsel of its neutral role and took a recess when counsel volunteered proposed revisions to the parties' agreement. The court's comments were limited to the rejection of the Plea Agreement with a 96 month maximum term and the explanation for the rejection. While at the end of the day the court recognized a portion of its statements may have been imperfectly articulated to some extent, Rule 11 "does not establish a series of traps for imperfectly articulated oral remarks. Such an interpretation would compel the judge to read his bench book as a script, instead of 'addressing the defendant personally' as required by the other parts of the rule." *U.S. v. Frank*, 36 F.3d 898, 903 (9th Cir. 1994). The Defendant's decision to enter into a Plea Agreement and change his plea on the eve of trial was not the result of "now or never tactics" or any judicial pressure or participation during the plea bargaining process. The accepted Plea Agreement was based on the Defendant's own reasoned decision as he confirmed in his plea colloquy:

> Court: "Have you had enough time to discuss this matter with Mr. Fischer?
> Defendant: Yes, I have.
> Court: Do you need any more time to talk with Mr. Fisher before we proceed on this substitute charge?
> Defendant: No, I don't sir.
> ...
> Court: Anyone threaten you to get you to plead guilty to this charge?
> Defendant: No, sir.

(ECF No. 167, Ex. B). The court's interaction with counsel and the Defendant did not violate Rule 11(c)(1) and therefore does not undermine the voluntariness of the Defendant's waiver included in his Plea Agreement or require that this court vacate

his sentence. *Cf. United States v. Davila*, 133 S.Ct. 2139, 2143 (2013) (explaining that although substantial compliance with Rule 11 is required, the purpose of Rule 11(h) is to guard against exalting 'ceremony...over substance' and holding that even a violation of Rule 11(c)(1) does not require vacatur of a plea 'if the record shows no prejudice to [the defendant's] decision to plead guilty').

**B. Knowing and Voluntary Waiver**

The facts and circumstances surrounding the signing and entry of the Plea Agreement, the Rule 11 plea colloquy, the express language of the waiver, and the entire record in this matter show that the waiver was knowingly and voluntarily made.

The agreement conferred significant benefits on the Defendant. Although he likely faced a mandatory minimum of fifteen years up to life term of imprisonment on the original charged offense, the agreement limited the Defendant's potential term of imprisonment to no more than 120 months, which the court ultimately imposed. By signing the agreement, the Defendant represented that:

> I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

(ECF No. 167, Ex. A at 12).

During the plea colloquy, the Defendant confirmed that he had adequate time to consult with counsel, that he had read the terms of the plea agreement, that he understood its terms (including the waiver provision), and that he was not threatened to plead guilty. Moreover, defense counsel also confirmed he had discussed the plea agreement with the Defendant and stated to the court that he was satisfied his client's plea was knowledgeable and voluntary. Finally, the Defendant has not claimed either in his Motion or Reply that he was unaware or did not understand the waiver of collateral attack rights in his plea agreement.

The record demonstrates the Defendant entered into the Plea Agreement and § 2255 waiver knowingly and voluntarily. Accordingly, the court next considers whether the remaining ineffective assistance of counsel claims raised by Defendant's § 2255 Motion are among the exceptions to the waiver.

**C. Ineffective Assistance of Counsel**

Defendant waived his right to post-conviction relief based on ineffective assistance of counsel *except* “one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence." (ECF No. 167, Ex. A). This phrase suggests the parties’ intent to authorize some kinds of ineffective assistance of claims, but not others. The Defendant’s ineffective assistance claims all relate to the pretrial motion stage and the pre-plea stage of his case, and therefore appear to fall within the exception of the Defendant’s waiver. Nonetheless, the court addresses these claims as they plainly lack substantive merit.

To establish ineffective assistance of counsel, a Defendant must show that his counsel's performance was deficient and that the petitioner was prejudiced as a result of this performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show prejudice, the Defendant must show that it is “‘reasonably likely’ the result would have been different” but for the ineffective assistance of counsel. *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011) (*quoting Strickland*, 466 U.S. at 696).

Defendant’s assertions meet neither prong of the *Strickland* test. Defense counsel’s alleged deficiencies were not in fact outside the wide range of reasonable professional assistance. The court notes that his attorney Robert Fischer is an experienced Federal Public Defender in this District. Defendant claims Mr. Fischer rendered ineffective assistance because he failed to object when the Government breached the Plea Agreement. He alleges a breach occurred when, prior to entering his guilty plea, the parties’ original agreement was changed. He claims the

undersigned judge changed the terms of the Plea Agreement and that counsel was ineffective for failing to advise him that the "judge could alter the plea agreements' terms" and "alter the sentence." (ECF No. 159 at 12). As discussed above, the court exercised its discretion in rejecting the parties' original Rule 11(c)(1)(C) agreement and the record belies the Defendant's assertion of judicial participation in the renegotiation of the parties' agreement.

Defendant also claims that he informed defense counsel of a viable Fourth Amendment challenge to the search of his vehicle because prior to his federal indictment, while in the Spokane County Jail, his state court appointed attorney had informed him that he had "a viable suppression issue." Defendant claims defense counsel "ignored" his request to investigate and raise the Fourth Amendment issue. However, counsel orally motioned the court to suppress at the pretrial conference on Friday, August 17, 2012. Oral motions to suppress are expressly authorized under Federal Rule of Criminal Procedure 47(b), which permits oral motions "made during a trial or hearing." The court took testimony and denied the oral motion. (ECF No. 137)("Considering the undisputed evidence of record, the testimony of Department of Corrections Officer John Hernandez, and the argument of counsel, Defendant's oral Motion to Suppress based upon an alleged illegal search in violation of the Fourth Amendment is Denied.").

Finally, Defendant cannot demonstrate he was prejudiced by any deficient conduct on the part of counsel as there is no reasonable probability that but for counsel's alleged failures he would not have pleaded guilty and would have insisted on going to trial, where if convicted he would have faced a 15-year mandatory minimum sentence or up to life term of imprisonment.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 159) is **DENIED**.

2. The court **DECLINES** to issue a certificate of appealability.

3. The Clerk shall file this Order in both files and furnish a copy of to Defendant and to counsel. The Clerk shall then close this file and close the related civil action, 13-CV-372-JLQ.

DATED this 5th day of February, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE